IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CITY OF ROSEVILLE EMPLOYEES' RETIREMENT SYSTEM, et al. | : : : | CIVIL ACTION |
| v. | : : | |
| HORIZON LINES INC., et al. | : | NO. 08-969 |

MEMORANDUM

Bartle, C.J.                                                June 18, 2009

      Plaintiffs City of Roseville Employees' Retirement System, City of Westland Police & Fire Retirement System, and James P. Flanagan brought this putative class action against Horizon Lines, Inc. ("Horizon") and its corporate officers, Charles G. Raymond, Mark Urbana, Gabriel Serra, R. Kevin Gill, and Gregory Glova on behalf of all purchasers of Horizon securities between March 2, 2007 and April 25, 2008 under the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq.  The plaintiffs allege that Horizon, a container shipping and logistics company, fraudulently inflated the value of its securities by entering into illegal price-fixing agreements with its competitors in order to manipulate prices in certain markets.

      Now before the court are the motions of the Police and Fire Retirement System of the City of Detroit ("Detroit P&F") for appointment of lead plaintiff and approval of lead and liaison counsel under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. 104-67, 109 Stat. 737, and for

consolidation of all related actions. The motion for consolidation will be denied as moot because the purportedly related case, Savidge v. Horizon Lines, Inc., No. 09-66 (E.D. Pa.), was voluntarily dismissed on March 4, 2009. The Michigan Institutional Fund Group, a group comprised of the three named plaintiffs, also made a motion for appointment as lead plaintiff. However it withdrew it upon its review of Detroit P&F's motion because Detroit P&F has a larger financial interest in the case. Thus, Detroit P&F's motion is presently unopposed.

I.

In reaching our decision on lead plaintiff status we may consider the pleadings that have been filed, the movant's application, and any other information we require to be submitted. In re Cendant Corp. Litig., 264 F.3d 201, 264 (3d Cir. 2001). Detroit P&F is a public pension fund with approximately $5 billion in assets under management. It purchased 80,422 and sold 26,300 shares of Horizon common stock during the class period, for a net purchase of 54,122 shares. This accounted for a total net expenditure of $1,257,556.91 on Horizon securities during the class period. Whether calculated on a first-in, first-out basis ("FIFO") or a last-in, first-out basis ("LIFO"), Detroit P&F purportedly suffered nearly $700,000 in losses in connection with its Horizon investments. It seeks damages based on Horizon's allegedly fraudulent public disclosures and resultant artificial inflation of its securities. To that end, Detroit P&F has hired the law firms Bernstein

Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Kirby McInerney LLP ("Kirby McInerney") to represent it, as well as Bouchard Margules & Friedlander, P.A. ("Bouchard Margules") to serve as liaison counsel.

## II.

Awarding lead plaintiff status in a class action securities lawsuit is a two-step process under the PSLRA. First, we identify a presumptive lead plaintiff, and second, we determine whether the presumption has been rebutted. Cendant, 264 F.3d at 262; see 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) & (II). We must adopt the presumption that a particular plaintiff is the "most adequate plaintiff" where that person, entity, or group (1) "has either filed the complaint or made a motion in response to a notice," (2) "in the determination of the court has the largest financial interest in the relief sought by the class," and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(i) & (iii)(I).

The determination of which plaintiff has the largest financial interest is often an easy one. Cendant, 264 F.3d at 262. We may consider, among other things, "(1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." Id.

To meet the "otherwise satisfies" criterion, the movant must establish only a prima facie case of typicality and adequacy under traditional Rule 23 principles. Id. at 263-65. Our inquiry here "need not be extensive," and "institutional investors and others with large losses will, more often than not, satisfy the typicality and adequacy requirements." Id. With respect to typicality, we ask whether the circumstances of the movant, or the legal theory upon which the movant bases its claims, "are markedly different" from those of the other class members. Id. at 265. When considering adequacy, we assess whether the movant has the ability and incentive to vigorously represent the class claims, whether it has obtained adequate counsel, and whether there is any conflict between the movant's claims and the claims it asserts on behalf of the class. Id. (quoting Hassine v. Jeffes, 846 F.2d 169, 179 (3d Cir. 1988)). Our Court of Appeals has also added two additional adequacy factors in the PSLRA context. The first is "whether the movant has demonstrated a willingness and ability to select competent class counsel and to negotiate a reasonable retainer agreement with that counsel." Id. The question is not whether the court approves of the choice of counsel, but simply whether the choice is "so deficient as to demonstrate that it will not fairly and adequately represent the interests of the class, thus disqualifying it from serving as lead plaintiff." Id. at 266. The second factor applies where a group of plaintiffs jointly

move for lead plaintiff status.  See id.  It is therefore not relevant here.

Once the court identifies the presumptive lead plaintiff it must determine whether that presumption has been rebutted.  The PSLRA is "quite specific on this point."  Id. at 268.  It provides that the presumption may be rebutted only if a member of the purported class proves that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  If the presumption is not rebutted, then the court should appoint the presumptive lead plaintiff as the lead plaintiff.  Cendant, 264 F.3d at 268.

Applying these principles of law is a straightforward process in the instant case.  Detroit P&F has moved for appointment as lead plaintiff.  With alleged losses totaling nearly $700,000 in connection with its investments in Horizon securities during the class period, it has a large financial interest in the outcome of the litigation.  It maintains that it has "the largest" interest and no plaintiff has disputed that claim.  Further, Detroit P&F is both an adequate and a typical class representative.  It is an institutional investor and it has already selected and retained competent counsel.  With allegedly substantial losses, it has reason to pursue vigorously the interests of the class.  There is no evidence that its claims and

legal theories are different from those belonging to other class members, and there is no evidence of conflict between its claims and the claims of other class members.  Thus, Detroit P&F is presumptively the most adequate plaintiff.

No party has successfully rebutted the presumption.  In fact, no party presently opposes the motion.  Accordingly, we will grant the motion of Detroit P&F for appointment as lead plaintiff.

### III.

Under 15 U.S.C. § 78u-4(a)(3)(B)(v), "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  "This is not an empty requirement; courts have the 'power and the duty to supervise counsel selection and counsel retention.'" In re Merck & Co., Inc. Sec. Litig., 432 F.3d 261, 266 (3d Cir. 2005) (quoting Cendant, 264 F.3d at 273).  The ultimate question in approving lead counsel is "whether the lead plaintiff's choices were the result of a good faith selection and negotiation process and were arrived at via meaningful arms-length bargaining."  Id.

Bernstein Litowitz and Kirby McInerney both have extensive experience representing plaintiffs in complex securities class actions.  In fact, Bernstein Litowitz was co-lead counsel in Cendant.  It also appears that Bouchard Margules has substantial relevant experience.  We find that the firms are highly qualified to serve as lead and liaison counsel.  There is nothing to suggest any lack of good faith in retaining these

firms, and there is no opposition to the motion to approve lead and liaison counsel.  Accordingly, we will grant the motions of Detroit P&F for appointment of lead plaintiff and approval of lead and liaison counsel.