**UNITED STATES DISTRICT COURT**

**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CITY OF ROSEVILLE EMPLOYEES' RETIREMENT SYSTEM, INDIVIDUALLY and ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | : : : : | No. 08-969 (HB) (Securities Class Action) |
| | : | |
| Plaintiff, | : : | Hon. Harvey Bartle, III |
| v. | : : | ELECTRONICALLY FILED |
| | : | |
| HORIZON LINES, INC., HORIZON LINES, LLC, CHARLES G. RAYMOND, MARK URBANIA, JOHN V. KEENAN, JOHN W. HANDY, BRIAN TAYLOR, GABRIEL SERRA, R. KEVIN GILL, and GREGORY GLOVA, | : : : : : : : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS HORIZON LINES, INC., HORIZON LINES, LLC, CHARLES G. RAYMOND, M. MARK URBANIA, JOHN V. KEENAN, JOHN W. HANDY AND BRIAN W. TAYLOR'S JOINT REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**

Anthony W. Clark (ID No. 2051)
Paul J. Lockwood (ID No. 3369)
Nicole A. DiSalvo (ID No. 4662)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899
Telephone:  (302) 651-3000
Facsimile:  (302) 651-3001
paul.lockwood@skadden.com

*Attorneys for Defendants Horizon Lines,*
*Inc. and Horizon Lines, LLC*

Steven L. Caponi (ID No. 3484)
BLANK ROME LLP
1201 Market Street
Wilmington, Delaware  19801
Telephone:  (302) 425-6400
Facsimile:  (302) 425-6464
caponi@blankrome.com

OF COUNSEL:
Joseph O. Click
BLANK ROME LLP
Watergate, 600 New Hampshire Ave., NW
Washington, DC  20037
Telephone:  (202) 772-5966
Facsimile:  (202) 572-8361

*Attorneys for Defendant Charles G. Raymond*

Kevin F. Brady (ID No. 2248)
Jeremy D. Anderson (ID No. 4515)
CONNOLLY BOVE LODGE
    & HUTZ LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware  19899
Telephone:  (302) 658-9141
Facsimile:  (302) 658-5614
kbrady@cblh.com

*Attorneys for Defendants M. Mark
Urbania, John W. Handy and Brian W.
Taylor*

William M. Lafferty (ID No. 2755)
MORRIS NICHOLS ARSHT &
    TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19899
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989
wlafferty@mnat.com

OF COUNSEL:
Christopher M. Curran
Matthew S. Leddicotte
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC  20005
Telephone: (202) 626-3600
Facsimile:  (202) 639-9355

*Attorneys for Defendant John V. Keenan*

DATED: March 26, 2010

# TABLE OF CONTENTS

**PAGE**

TABLE OF CASES ................................................................................................................. iii

SUMMARY OF ARGUMENT ............................................................................................... 1

ARGUMENT ........................................................................................................................... 4

I.     PLAINTIFF HAS NOT ADEQUATELY ALLEGED A STRONG INFERENCE
OF SCIENTER WITH PARTICULARITY. ..................................................................... 4

     A.     The Amended Complaint Fails To Adequately Allege Scienter Against
Raymond, Urbania, Keenan, Handy And Taylor ...................................................... 4

          1.     Plaintiff has not shown a strong inference that Raymond, Urbania,
Keenan, Handy and Taylor participated in the alleged price fixing. ........... 4

          2.     The rate increases were not "red flags." ...................................................... 7

          3.     The Individual Defendants' stock sales do not raise an inference
that there was a motive to hide information ................................................ 9

     B.     Plaintiff Fails To Adequately Allege Scienter Against Horizon Lines ................. 11

          1.     Since the allegations against the Individual Defendants are
insufficient, the Company did not act with scienter as to their
statements .................................................................................................. 11

          2.     The scienter of Serra, Gill and Glova cannot be attributed to the
Company because they did not make material false statements to
investors. ................................................................................................... 12

          3.     There are no particularized facts alleged in the Amended
Complaint supporting a strong inference of corporate scienter in
the absence of an identified speaker acting with intent. ............................ 14

II.     THE AMENDED COMPLAINT DOES NOT ADEQUATELY ALLEGE A
VIOLATION OF SECTION 10(B) OR RULE 10(b)-5 IN CONNECTION WITH
STATEMENTS ALLEGEDLY MADE BY SERRA, GILL OR GLOVA. ...................... 16

     A.     The Statements Attributed To Serra, Gill And Glova Are Not Materially
Misleading ........................................................................................................... 16

     B.     The Statements In The Special Advertising Section Were Not Made "In
Connection With" The Purchase Or Sale Of A Security. ...................................... 19

i

C.      Serra's January 31, 2005 Statement Is Not Actionable. ..........................................23

CONCLUSION .............................................................................................................................25

# TABLE OF CASES

**CASES**                                                                                  **PAGE(S)**

*In re Adaptive Broadband Sec. Litig.*,
    No. C 01-1092 SC, 2002 WL 989478 (N.D. Cal. Apr. 2, 2002) ........................................7

*In re Advanta Corp. Sec. Litig.*,
    180 F.3d 525 (3d Cir. 1999)....................................................................................2, 7, 8, 17

*In re Alpharma Inc. Sec. Litig.*,
    372 F.3d 137 (3d Cir. 2004)....................................................................................5, 9, 10

*In re Apple Computer, Inc. Sec. Litig.*,
    243 F. Supp. 2d 1012 (N.D. Cal. 2002) ...........................................................................15

*In re Astea Int'l Inc. Sec. Litig.*,
    C.A. No. 06-1467, 2007 WL 2306586 (E.D. Pa. Aug. 9, 2007).......................................10

*In re ATI Techs., Inc., Sec. Litig.*,
    216 F. Supp. 2d 418 (E.D. Pa. 2002) ..............................................................................17

*Baker v. MBNA Corp.*,
    C.A. No. 05-272, 2007 WL 2009673 (D. Del. July 6, 2007)...........................................11

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997)...........................................................................................10

*In re Cambrex Corp. Sec. Litig.*,
    No. 03-CV-4896 (WJM), 2005 WL 2840336 (D.N.J. Oct. 27, 2005).........................10, 11

*In re Campbell Soup Co. Sec. Litig.*,
    145 F. Supp. 2d 574 (D.N.J. 2001) .................................................................................17

*In re Carter-Wallace, Inc. Sec. Litig.*,
    150 F.3d 153 (2d Cir. 1998)......................................................................................21, 22

*City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*,
    399 F.3d 651 (6th Cir. 2005) ..........................................................................................14

*City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*,
    C.A. No. 08-969, 2009 WL 3837659 (D. Del. Nov. 13, 2009) ................................ *passim*

*In re Craftmatic Sec. Litig.v. Kraftsow*,
    890 F.2d 628 (3d Cir. 1989)............................................................................................21

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation*,
    256 F.R.D. 82 (D. Conn. 2009)..........................................................................................24

*Fosburg v. Lehigh Univ.*,
    No. Civ. A. 98-CV-864, 1999 WL 124458 (E.D. Pa. Mar. 4, 1999).................................20

*Galati v. Commerce Bancorp, Inc.*,
    No. Civ. 04-3252 (RBK), 2005 WL 3797764 (D.N.J. Nov. 7, 2005),
    *aff'd*, 220 F. App'x 97 (3d Cir. 2007).........................................................................2, 17

*Glazer Capital Management, LP v. Magistri*,
    549 F.3d 736 (9th Cir. 2008) ........................................................................................15

*In re Great Atl. & Pac. Tea Co. Sec. Litig.*,
    No. 03-4100, 2004 WL 1541232 (3d Cir. July 9, 2004).................................................6, 7

*Hemming v. Alfin Fragrances, Inc.*,
    690 F. Supp. 239 (S.D.N.Y. 1988).........................................................................3, 20, 22

*Institutional Investors Group v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009).............................................................................................11

*In re Kidder Peabody Sec. Litig.*,
    Civ. No. 94-3954 (JFK), 1995 WL 590624 (S.D.N.Y. Oct. 4, 1995)...............................23

*Menkes v. Stolt-Nielsen S.A.*,
    No. 3:03CV409(DJS), 2005 WL 3050970 (D. Conn. Nov. 10, 2005) .......................14, 18

*In re MetLife Demutualization Litigation*,
    229 F.R.D. 369 (E.D.N.Y. 2005) ....................................................................................24

*Mill Bridge V, Inc. v. Benton*,
    C.A. No. 08-2806, 2009 WL 4639641 (E.D. Pa. Dec. 3, 2009) .......................................10

*Morse v. McWhorter*,
    200 F. Supp. 2d 853 (M.D. Tenn. 2000),
    *vacated on other grounds by*, 290 F.3d 795 (6th Cir. 2002)................................................9

*In re Motorola Sec. Litig.*,
    No. 03-C-287, 2004 WL 2032769 (N.D. Ill. Sept. 9, 2004)..............................................14

*In re MTC Elec. Techs. S'holders Litig.*,
    898 F. Supp. 974, 987 (E.D.N.Y. 1995) .........................................................................24

*In re NUI Securities Litig.*,
    314 F. Supp. 2d 388 (D.N.J. 2004) .................................................................................13

*In re Par Pharm. Sec. Litig.*,
　　C.A. No. 06-cv-3226 (PGS), 2009 WL 3234273 (D.N.J. Sept. 30, 2009) ........................7

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*,
　　No. 08 Civ. 8143(WHP), 2010 WL 961596 (S.D.N.Y. Mar. 17, 2010)............................9

*In re Providian Fin. Corp. Sec. Litig.*,
　　152 F. Supp. 2d 814 (E.D. Pa. 2001) .............................................................17

*In re Quintel Entm't Inc. Sec. Litig.*,
　　72 F. Supp. 2d 283 (S.D.N.Y. 1999)................................................................24

*Rand v. Cullinet Software, Inc.*,
　　847 F. Supp. 200 (D. Mass. 1994) ..................................................................23

*In re Reliance Sec. Litig.*,
　　135 F. Supp. 2d 480 (D. Del. 2001)................................................................24

*Semerenko v. Cendant Corp.*,
　　223 F.3d 165 (3d Cir. 2000)..........................................................................21

*Stinson v. Van Valley Dev. Corp.*,
　　714 F. Supp. 132 (E.D. Pa. 1989), *aff'd mem.*, 897 F.2d 524 (3d Cir. 1990) ...............3, 24

*In re Suprema Specialties, Inc. Sec. Litig.*,
　　438 F.3d 256 (3d Cir. 2006)...........................................................................5

*Tellabs, Inc. v. Makor Issuers & Rights, Ltd.*,
　　551 U.S. 308 (2007)......................................................................................8

*In re U.S. Aggregates, Inc. Sec. Litig.*,
　　235 F. Supp. 2d 1063 (N.D. Cal. 2002) ..........................................................24

*Urbach v. Sayles*,
　　Civ. No. 91-1291, 1991 WL 236183 (D.N.J. Sept. 4, 1991) ...............................24

*In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litigation*,
　　364 F. Supp. 2d 980 (D. Minn. 2005)...............................................................5

*Zelman v. JDS Uniphase Corp.*,
　　376 F. Supp. 2d 956 (N.D. Cal. 2005) ............................................................24

*Zucco Partners, LLC v. Digimarc Corp.*,
　　552 F.3d 981 (9th Cir. 2009) ......................................................................2, 6

Defendants Horizon Lines, Inc. and Horizon Lines, LLC (collectively "Horizon Lines" or the "Company"), Charles G. Raymond, M. Mark Urbania, John V. Keenan, John W. Handy and Brian W. Taylor (the "Individual Defendants," and, together with Horizon Lines, the "Defendants") submit this brief in further support of their motion to dismiss the Amended Consolidated Securities Class Action Complaint (the "Amended Complaint" or "AC").[1]

## SUMMARY OF ARGUMENT

1.  Plaintiff attempts to establish the "strong inference of scienter" required to plead securities fraud under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 by recycling the arguments and allegations that the Court rejected in the Dismissal Opinion.  Plaintiff points to the positions within Horizon Lines held by Raymond, Urbania, Keenan, Handy and Taylor and assumes that they must have known about the alleged antitrust conspiracy engaged in by the Puerto Rican Division Employees.  Plaintiff also again relies on the same vague and conclusory statements by a government attorney and three former employees who pled guilty to antitrust violations regarding other unnamed and uncharged persons.  Plaintiff cites stock sales and incentive compensation received by the Individual Defendants to support a purported motive to commit fraud.  Plaintiff also alleges that the fact that Horizon Lines was able to raise rates during soft market conditions was a "red flag" that creates a strong inference of conscious misbehavior or recklessness on the part of the Individual Defendants.  Each of these arguments already has been considered and rejected by the Court in the Dismissal Opinion.

2.  Plaintiff's only new argument regarding the Individual Defendants (other than adding Handy and Taylor and applying the same discredited scienter theories to them) is its

---

[1]   Undefined capitalized terms are defined in Defendants' Joint Opening Brief In Support Of Their Motion To Dismiss The Amended Complaint (cited "Op. Br. at _").

assertion that Urbania purportedly abruptly resigned just a few weeks before the DOJ announced

its investigation into Horizon Lines.  But the Amended Complaint alleges no facts suggesting

that the timing of Urbania's resignation was anything other than coincidental.  As the Amended

Complaint recognizes, when Urbania resigned, the DOJ Investigation was still covert.  Thus,

Urbania's resignation falls far short of establishing a strong inference of scienter.  *See Zucco*

*Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1001-02 (9th Cir. 2009).

        3.  Plaintiff attempts to plead corporate scienter against Horizon Lines by alleging

that the three former Puerto Rican Division Employees who pled guilty to antitrust violations,

Serra, Gill and Glova, made false statements to investors on behalf of the Company.  The

statements attributed to these individuals, however, are plainly different from the statements this

Court previously held to be misleading absent disclosure of the alleged price-fixing activity – *i.e.*

the Puerto Rican Division Employees are not alleged to have made "statements regarding

Horizon's ability to increase revenue in the Puerto Rico market despite volume decreases."  *City*

*of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*, C.A. No. 08-969, 2009 WL 3837659, at

*9 (D. Del. Nov. 13, 2009).  The statements attributed to Serra, Gill and Glova concern customer

service, customer satisfaction and other information of interest to Horizon Lines' customers; they

are not alleged to have made statements during the class period purporting to explain the sources

of Horizon Lines' revenues, like those the Court found to be materially false or misleading in the

Dismissal Opinion absent disclosure of the alleged true source of those revenues.  The Puerto

Rican Division Employees' generalized discussion of Horizon Lines' "success" in making its

service attractive to customers does not create a disclosure violation.  *See In re Advanta Corp.*

*Sec. Litig.*, 180 F.3d 525, 539 (3d Cir. 1999); *Galati v. Commerce Bancorp, Inc.*, No. Civ. 04-

3252 (RBK), 2005 WL 3797764 (D.N.J. Nov. 7, 2005), *aff'd*, 220 F. App'x 97 (3d Cir. 2007).

4.  Plaintiff also has not adequately alleged that the statements made by the Puerto Rican Division Employees satisfy the "in connection with the purchase or sale" of a security requirement of Section 10(b).  Their statements are not financial, but concern information of interest to customers, and were made in media – particularly, a special advertising section of a trade publication – that are not the type in which a reasonable investor would seek investor-related information.  *See Hemming v. Alfin Fragrances, Inc.*, 690 F. Supp. 239, 244-45 (S.D.N.Y. 1988).

5.  Plaintiff identifies one statement from the Puerto Rican Division Employees that concerns revenues or rates, but that statement was made *eight months before the Company went public* and *two years before Plaintiff purchased its stock*.  Information regarding rates obtained by the Company years earlier was obviously stale by the time Plaintiff bought its stock.  Plaintiff responds that statements from outside the class period can be actionable, but Plaintiff cites no case in which a statement was made long before the securities in dispute were issued or traded.  Plaintiff tries to establish its reliance on the statement years later by invoking the fraud-on-the-market theory, but there was no market at all at the time the statement was made.  Plaintiff simply cannot connect a statement from January 2005 regarding shipping rates from 2003 and 2004 to its purchase of stock in March 2007.  *See Stinson v. Van Valley Dev. Corp.*, 714 F. Supp. 132, 134-35 (E.D. Pa. 1989), *aff'd mem.*, 897 F.2d 524 (3d Cir. 1990).

For all of these reasons and the additional reasons set forth below, Defendants' motion to dismiss should be granted.

**ARGUMENT**

I.   **PLAINTIFF HAS NOT ADEQUATELY ALLEGED A STRONG INFERENCE OF SCIENTER WITH PARTICULARITY.**

     A.   **The Amended Complaint Fails To Adequately Allege Scienter Against Raymond, Urbania, Keenan, Handy And Taylor.**

          Plaintiff attempts to plead scienter against the Individual Defendants on the grounds that: (i) they actually knew of the alleged antitrust conspiracy; (ii) they recklessly ignored so-called red flags that should have alerted them to the price fixing; and (iii) they were motivated to commit fraud in order to sell stock into an inflated market.  None of these contentions are supported by particularized factual allegations.

          1.   **Plaintiff has not shown a strong inference that Raymond, Urbania, Keenan, Handy and Taylor participated in the alleged price fixing.**

          This Court previously held that the Complaint's allegations against Raymond, Urbania and Keenan failed to meet the PSLRA's strict standards to plead scienter.  *City of Roseville*, 2009 WL 3837659, at *17.  As explained in the Opening Brief, the new allegations in the Amended Complaint still do not allege facts that show that Raymond, Urbania or Keenan (or new defendants Handy and Taylor) had knowledge of the price-fixing activity, and the collective allegations still do not give rise to a strong inference that they knowingly or recklessly made false statements to mislead Plaintiff.  (Op. Br. at 18-27)  Plaintiff has responded by merely re-arguing the positions already rejected by this Court.

          Plaintiff again recites Horizon Lines' management structure and claims this shows that the Individual Defendants must have known about the alleged price-fixing conspiracy being perpetrated by the Puerto Rican Division Employees.  (Ans. Br. at 34)  This Court has previously held that such allegations are inadequate to allege scienter.  *City of Roseville*, 2009 WL 3837659, at *14 ("It is well established that, 'allegations that a securities-fraud defendant, because of his

position in the company, 'must have known' a statement was false or misleading are . . . inadequate.'") (quoting *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 539 (3d Cir. 1999)); *see also In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 149 (3d Cir. 2004) ("'[G]eneralized imputations of knowledge' do not satisfy the scienter requirement 'regardless of the defendants' positions within the company.'") (citation omitted).

Plaintiff also attempts to reargue that the government's statements about Serra and Gill's "alleged collusion with unnamed Horizon [Lines'] executives" are sufficient to establish the scienter of the Individual Defendants because they were senior in Horizon Lines' management hierarchy to the Puerto Rican Division Employees.  (Ans. Br. at 33)  However, the Court already rejected this argument and, in fact, characterized the government's statements as "conclusory and speculative at best."  *See City of Roseville*, 2009 WL 3837659, at *15 (citation omitted).[2]  Simply adding Handy and Taylor as defendants does not change this analysis, and Plaintiff does not explain why it should.  It would make no sense to hold that scienter can be adequately alleged merely by the pleading technique of bringing claims against every executive in a company's hierarchy when there are insufficient allegations as to any of them.[3]

---

[2]   Plaintiff cites *In re Xcel Energy, Inc.*, *Securities, Derivative & "ERISA" Litigation*, 364 F. Supp. 2d 980, 995 (D. Minn. 2005), for the proposition that a government investigation is indicative of fraud.  (Ans. Br. at 35 n.16)  However, *Xcel Energy*, an opinion approving a fee application, does not even address the requirements of pleading scienter.

[3]   Plaintiff's reliance on *In re Suprema Specialties, Inc. Securities Litigation* is also misplaced. 438 F.3d 256 (3d Cir. 2006).  In *Suprema*, plaintiffs alleged "specific knowledge and conduct" to show that the defendants participated in the alleged fraud.  *Id.* at 279. Specifically, the allegations in the complaint purported to tie the defendants to signed checks written to co-conspirators and control of the accounts in question, and the defendants actively prevented other staff from having contact with the accounts or the division of the company involved with the fraud.  *Id.*  Here, there are no such specific allegations linking Raymond, Urbania, Keenan, Handy or Taylor to the price-fixing conspiracy.

Plaintiff's only new argument is an assertion that Urbania resigned as Chief Financial Officer under "suspicious" circumstances.  (Ans. Br. at 39-40)  This allegation does not raise any inference of scienter, much less a strong inference.

Plaintiff contends it was "suspicious" that Urbania resigned just a few weeks before the DOJ's surprise raid on Horizon Lines' offices, but alleges no facts suggesting that Urbania knew of the government's "covert" investigation at the time.  (*See* AC ¶ 55)  Thus, Urbania's resignation is no more suspicious than if he had resigned months earlier – there are no facts alleged suggesting that he left to avoid impending action by the government.

Moreover, Plaintiff's characterization of the resignation as "abrupt" is void of any factual bases.  (Ans. Br. at 39-40)  Plaintiff contends Urbania's departure was "abrupt" because he was publicly described as a "key" employee on February 6, 2008 and resigned eight weeks later.  That timing is hardly abrupt.  Plaintiff also notes that Urbania's replacement arrived within days of his departure (AC ¶ 258), but that suggests a smooth transition, not an abrupt resignation.

Indeed, there are no specific allegations in the Amended Complaint that demonstrate Urbania's knowledge of or involvement in the price-fixing conspiracy at all.  Merely saying the timing of the resignation was "suspicious" does not "demonstrate[ ] that it is 'at least as compelling'" that Urbania acted with scienter as that he acted without it.  *City of Roseville*, 2009 WL 38337659, at *17 (citation omitted); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009) ("a plaintiff must allege sufficient information to differentiate between a suspicious change in personnel and a benign one.  Mere conclusory allegations that a financial manager resigns or retires during the class period or shortly before the corporation issues its restatement, without more, cannot support a strong inference of scienter.") (citation omitted); *In re Great Atl. & Pac. Tea Co. Sec. Litig.*, No. 03-4100, 2004 WL 1541232, at *4 (3d

Cir. July 9, 2004) (defendant's resignation not enough to plead scienter when plaintiff failed to

plead specific facts linking the resignation to alleged wrongdoing).[4]  Further, Plaintiff cites no

authority to support its contention that Urbania's departure was suspicious because it caused him

to forfeit unvested stock and stock options.

### 2.    The rate increases were not "red flags."

As explained in the Opening Brief, Plaintiff fails to plead that the Individual

Defendants were reckless in not knowing that the alleged price-fixing conspiracy was occurring

because the Amended Complaint does not allege with particularity "*strong* circumstantial

evidence of conscious misbehavior or recklessness."  (Op. Br. at 27) (emphasis in original)

(citing *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 532 (3d. Cir. 1999))

In response, Plaintiff argues that a new allegation in the Amended Complaint

shows that the "'rates and revenues were so distorted by the illegal conduct that [the Individual

Defendants] should have been aware of it.'"  (Ans. Br. at 35)  The new allegation highlighted in

the Answering Brief is a comparison of a study of average revenues in the Puerto Rican tradelane

from 1991 to 2004 to a chart of purported Horizon Lines' revenues between 2004 to 2008.  (*Id*. at

36; AC ¶¶ 83-84)  Even accepting that revenue comparisons over time can sometimes be

relevant, the comparisons must consider and account for changes in the marketplace.  Here, the

Amended Complaint does not support the proposition that the Individual Defendants' failure to

reach the conclusion of price fixing was "an extreme departure from the standards of ordinary

---

[4]    Even the cases cited by Plaintiff acknowledge that resignations alone are not evidence of scienter.  *See In re Adaptive Broadband Sec. Litig.*, No. C 01-1092 SC, 2002 WL 989478, at *14 (N.D. Cal. Apr. 2, 2002) (noting that three defendants resigned while company was restating its financials and conducting an internal investigation); *In re Par Pharm. Sec. Litig.*, C.A. No. 06-cv-3226 (PGS), 2009 WL 3234273, at *2 (D.N.J. Sept. 30, 2009) (noting that CEO resigned at request of the board).

care." *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 535 (3d Cir. 1999) (citation omitted).

Plaintiff's own allegations suggest an innocent explanation – that a large carrier, known as a

price-cutter, went bankrupt and left the market in 2001, resulting in a reduction in capacity and

increase in concentration, which one could reasonably expect to result in rate increases.  (AC ¶¶

82)  Additionally, the Amended Complaint alleges that the Individual Defendants were told that

the Company applied "increased bunker and intermodal fuel surcharges" during this period of

high fuel costs.  (*See* AC ¶¶ 129, 132, 141, 159)  Such surcharges would have an upward impact

on operating revenues even absent an increase in volume.  In light of these alleged facts, the

Individual Defendants' failure to identify the supposed price-fixing conspiracy hardly amounts to

an "extreme departure from the standards of ordinary care." *Advanta*, 180 F.3d at 535.

Plaintiff mischaracterizes Defendants' arguments based on the facts alleged in the

Amended Complaint as improper "fact-based" arguments, but under *Tellabs, Inc. v. Makor

Issuers & Rights, Ltd.*, 551 U.S. 308 (2007), this Court must consider the "competing inferences"

that can be drawn from the facts alleged in the complaint.  Plaintiff bears the heavy burden of

showing that "the inference of scienter [is] at least as strong as any opposing inference." *Id.* at

326.  Here, the inference of recklessness – an extreme departure from ordinary care – is not as

strong as the competing inferences of permissible rate increases following the exit of a known

price-cutter from the market and "unprecedented increases in fuel prices."  (AC ¶¶ 82, 153)

Plaintiff also claims that recklessness can be inferred because the Individual

Defendants were "repeatedly asked questions . . . attempting to understand how rates could be

increasing as volumes softened . . . [and] Defendants gave a number of false explanations for

these increases . . . ."  (Ans. Br. at 37)  The Dismissal Opinion considered these same allegations

and found no strong inference of scienter "'absent particularized allegations showing that

defendants had ample reason to know of the falsity of their statements.'" *City of Roseville*, 2009 WL 3837659, at *15 (citation omitted).  Plaintiff points to no facts or law to justify reargument of the Court's conclusion.[5]

### 3. The Individual Defendants' stock sales do not raise an inference that there was a motive to hide information.

In its Dismissal Opinion, the Court held that stock sales by Raymond, Urbania and Keenan did not give rise to a strong inference of scienter.  *City of Roseville*, 2009 WL 3837659, at *16 ("Absent evidence of unusual . . . scope or timing, we will not infer fraudulent intent from the mere fact that some officers sold stock.") (internal quotation marks and citations omitted).  Plaintiff nevertheless recycles its prior allegations, adding only assertions related to the vesting of restricted stock after the IPO.  These new alleged facts do not undercut the Court's prior ruling that fraudulent intent cannot be inferred from the stock sales.

Plaintiff does not dispute that "incentive compensation can hardly be the basis on which an allegation of fraud is predicated."  *Morse v. McWhorter*, 200 F. Supp. 2d 853, 898 (M.D. Tenn. 2000) (rejecting claim that defendants' cash incentive plan can establish basis for scienter) (internal quotation marks omitted), *vacated on other grounds by*, 290 F.3d 795 (6th Cir. 2002).  As explained in *In re Alpharma Inc. Securities Litigation*, "[a] large number of today's corporate executives are compensated in terms of stock and stock options . . . .  Thus, [i]t follows

---

[5]    As the Court already noted, Plaintiff's assumption of widespread knowledge of the alleged conspiracy ignores that price fixing "by its very nature, is a secret undertaking."  *City of Roseville*, 2009 WL 3837659, at *16.  Plaintiff does not allege the existence of a single contrary document or provide a single credible confidential witness to support its assertion that Raymond, Urbania, Keenan, Handy and Taylor had access to information disclosing the conspiracy.  (*See* Op. Br. at 46-47); *see also Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, No. 08 Civ. 8143(WHP), 2010 WL 961596, at *9 (S.D.N.Y. Mar. 17, 2010) (recklessness not adequately pleaded where no internal reports or statements contradicted the statements made).

. . . that these individuals will trade those securities in the normal course of events."  372 F.3d 137, 152 (3d Cir. 2004) (complaint failed to impute to defendants knowledge of false accounting based on stock sales) (internal quotation marks and citation omitted).

The only new transactions alleged in the Amended Complaint that were not made pursuant to Rule 10b5-1 plans are two stock sales during the class period:  (1) a November 2006 sale of 125,000 shares by Raymond for gross proceeds of $2.6 million, and (2) a March 2007 sale of 138,602 shares by Keenan for gross proceeds of $3.4 million.  (AC ¶ 268)  These sales likewise fail to create an inference of scienter because no facts are alleged to suggest that they "were made at times and in quantities that were suspicious enough to support the necessary strong inference of scienter."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1424 (3d Cir. 1997) (citations omitted).

Contrary to Plaintiff's assertion (Ans. Br. 43 n.23), the timing of these sales is not suspicious.  Keenan's and Raymond's sales came 13 months and 17 months, respectively, before the announcement of the DOJ's antitrust investigation.  "'A broad temporal distance between stock sales and a disclosure of bad news defeats any inference of scienter.'"  *In re Cambrex Corp. Sec. Litig.*, No. 03-CV-4896 (WJM), 2005 WL 2840336, at *10 (D.N.J. Oct. 27, 2005) (citation omitted) (sales months before disclosure were not suspicious); *see also In re Astea Int'l Inc. Sec. Litig.*, C.A. No. 06-1467, 2007 WL 2306586, at *15 (E.D. Pa. Aug. 9, 2007) (five months between sale and disclosure not suspicious).  Although Plaintiff notes that these sales occurred about two weeks after Horizon announced positive quarterly results (Ans. Br. at 43 n.23), these announcements do not make the sales suspicious.  *See In re Astea Int'l*, 2007 WL 2306586, at *15 (timing suspicious where stock is sold shortly in advance of disclosure of bad news); *Mill Bridge V, Inc. v. Benton*, C.A. No. 08-2806, 2009 WL 4639641, at *29 (E.D. Pa. Dec. 3, 2009)

(timing suspicious where stock purchases made shortly before announcement of good news).

"At most, the allegations merely establish that the sales took place within the class period."

*Cambrex*, 2005 WL 2840336, at *10.[6]

**B.      Plaintiff Fails To Adequately Allege Scienter Against Horizon Lines.**

As explained below, the Amended Complaint fails to allege corporate scienter

because it does not adequately allege (i) scienter on the part of Raymond, Urbania, Keenan,

Handy and Taylor, (ii) that Serra, Gill or Glova made material false or misleading statements to

investors on behalf of the Company, or (iii) sufficient facts to show that Horizon Lines acted

with scienter without identifying any individual speaker who had scienter.

**1.      Since the allegations against the Individual Defendants are insufficient, the Company did not act with scienter as to their statements.**

As noted above, the Amended Complaint fails to allege that, when Raymond,

Urbania, Keenan, Handy and Taylor spoke for Horizon Lines, they had the requisite fraudulent

intent to establish a claim under Section 10(b) or Rule 10b-5.  Accordingly, Plaintiff has not

---

[6]   Plaintiff's failure to allege the total amount of Raymond or Keenan's stock holdings precludes the Court from determining if these sales were suspicious in amount.  That omission was likely deliberate, as the amounts are not significant.  SEC records previously submitted to the Court in connection with the last motion to dismiss showed that Raymond owned just over 1,016,477 shares at the beginning of the class period, so that this one sale was for only 12.5% of Raymond's total holdings, with Raymond retaining 87.5%.  *See Institutional Investors Group v. Avaya*, 564 F.3d 242, 279 (3d 2009) (officers' sale of 1.7% and 17.7% of holdings were not suspicious because, among other things, officers retained a large percentage of their stocks).  Further, those SEC records show that at the close of the class period, Raymond still held 1,014,442 shares.  Similarly, the 138,602 shares sold by Keenan in March 2007 were only 26% of his total holdings of 518,000 shares at the outset of the class period and he owned roughly as many shares (496,721) at the close of the class period as at its outset.  As his share ownership barely changed overall and his largest sale was less than 30% of his then-total holdings, his sales were not unusual.  *See Baker v. MBNA Corp.*, C.A. No. 05-272, 2007 WL 2009673, at *7 (D. Del. July 6, 2007) ("'30 percent' figure serves as a useful guide" for unusual sales).

alleged corporate scienter on the basis of their statements. "'[I]t is not enough to establish fraud

on the part of a corporation that one corporate officer makes a false statement that another officer

knows to be false.'" *City of Roseville*, 2009 WL 3837659, at *17 (citation omitted).

> **2.     The scienter of Serra, Gill and Glova cannot be attributed to the
> Company because they did not make material false statements to
> investors.**

Plaintiff argues that an alleged fraudulent intent by the Puerto Rican Division

Employees can be attributed to Horizon Lines because they purportedly participated in the

making of false and misleading material statements. (Ans. Br. at 45) This argument is without

merit because none of the alleged statements attributed to Serra, Gill or Glova is actionable

because they were not (i) material false statements and (ii) made in connection with the purchase

or sale of a security. (*See* pp. 16-25, *infra*)

Plaintiff further argues that Serra "participated in" and "approved" statements

made by Raymond, Urbania, Keenan, Handy and Taylor because they purportedly "had ample

and continuous access to Serra with respect to the Puerto Rican market, and repeated information

that they received from Serra in public statements they made." (Ans. Br. at 46-47) Nowhere in

the paragraphs of the Amended Complaint cited by Plaintiff in support of this sweeping

statement is Serra (or Gill or Glova) ever mentioned. (*See* AC ¶¶ 174, 176, 196, 202)

Nevertheless, Plaintiff presumes that Serra "'furnished information' that other Defendants used to

make false and misleading statements in Horizon's SEC filings, press releases and conference

calls." (Ans. Br. at 47) Plaintiff claims that these allegations are particularized because the

figures and reports generated by the Puerto Rican division (which allegedly were a product of the

conspiracy) must have been incorporated into Horizon's reported revenue and EBITDA. (*Id.*)

This argument would make every person employed in a company's business operations a

corporate speaker because his or her efforts eventually roll up to the consolidated financial

statements.  The Court already considered this very issue and ruled that corporate scienter could

not be alleged in such a broad fashion:

> Of course, it could be said that, in a very literal sense, Serra, Gill, and Glova, by
> purposefully and unlawfully influencing the rates on which Raymond, Keenan,
> and Urbania's statements were based, have "participat[ed] in any way" in the
> misleading remarks.  *However, we believe it would be unreasonable to impute
> liability to the corporate defendants based on such an attenuated chain of
> causation.*

*City of Roseville*, 2009 WL 3837659, at *18 n.32 (emphasis added and citations omitted).  This

same attenuated argument should again fail.

Plaintiff similarly argues that a strong inference of corporate scienter can be

inferred because Serra purportedly "did not merely sit passively aside" as others issued

misleading statements.  (Ans. Br. at 48)[7]  The only specific statement Plaintiff points to in

support of this contention is an allegation that "Handy publicly acknowledged that Serra

provided him with information regarding the health of the Puerto Rico trade lane" during a

conference call.  (*Id.*)  The actual statement in the Amended Complaint refers to an unnamed

"VP in Puerto Rico," not Serra.  (*See* AC ¶ 187)  The unnamed VP in Puerto Rico did not give

Handy the views he expressed in statements the Court previously found to be false, *i.e.*, rates,

sources of revenues or competition.  *See City of Roseville*, 2009 WL 3837659, at *9.  Rather,

Handy merely referenced a conversation he had with an unnamed "VP in Puerto Rico" in which

that person said that the economy in Puerto Rico was generally experiencing an increase in

consumer spending and investment by pharmaceutical and biotech companies.  (*See* AC ¶ 187)

---

[7]   Plaintiffs' reliance on *In re NUI Securities Litigation*, 314 F. Supp. 2d 388, 413 (D.N.J.
2004), is misplaced.  In *NUI*, the general counsel received a letter describing the problem
with the financial statements.  *Id.*  As a company's general counsel plays a significant role in
SEC filings, that circumstance is plainly different than here.

Such a statement about general economic conditions, even if said by Serra to investors himself, would not be actionable as a materially false and misleading statement absent disclosure of the price fixing. *See Menkes v. Stolt-Nielsen S.A.*, No. 3:03CV409(DJS), 2005 WL 3050970, at *8 (D. Conn. Nov. 10, 2005) (statements that are "generic description[s] of the state of the market as a whole" were "too remote" from alleged price-fixing conduct to make statements misleading).

>    **3.      There are no particularized facts alleged in the Amended Complaint supporting a strong inference of corporate scienter in the absence of an identified speaker acting with intent.**

Plaintiff further argues that the wrongdoing here was so obvious that some person speaking or acting for the corporation must have known about it even if Plaintiff cannot identify who. (*See* Ans. Br. at 49)  The cases relied on by Plaintiff demonstrate that patent and obvious wrongdoing – absent here – is required for corporate scienter to be established under this theory. *See In re Motorola Sec. Litig.*, No. 03-C-287, 2004 WL 2032769, at *31 (N.D. Ill. Sept. 9, 2004) (company ignored litany of risks including huge size of loan, debtor's pattern of default, other potential lenders' assessment of risk, misbehavior by debtor, poor economic conditions, and glaring refusal to provide access to financial records); *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 684-88 (6th Cir. 2005) (disregard for internal reports that conflicted with external statements made to public on same topics and secret settlement with insurance companies that were part of alleged fraud).

Here, the Court has already held that the alleged illegal price-fixing conspiracy was "by its very nature [] a secret undertaking" and was not, on the facts alleged, something that had to be obvious to the senior executives of the Company. *City of Roseville*, 2009 WL 3837659, at *16.  As explained above, the so-called red flags described in the Amended Complaint are no more salient than the purported red flags the Court previously found insufficient to plead a strong inference of recklessness in the original complaint.  Notably, unlike

14

the cases cited in the Answering Brief, Plaintiff has not alleged that Horizon Lines disregarded internal reports or quietly settled claims relating to, or ignored specific information regarding, the alleged price-fixing conspiracy.[8]

   In a similar vein, Plaintiff argues that even though the Amended Complaint fails to adequately plead securities fraud as to any particular individual, it adequately pleads a "compelling inference that at least one of the Individual Defendants . . . had knowledge of the conspiracy" and, therefore, pleads corporate scienter.  (Ans. Br. at 49)  But, as explained *supra* pp. 4-9, there is no "compelling inference" that any of the Individual Defendants acted with scienter as a result of purported red flags or their positions in the Company.

   The only allegation that could possibly apply with greater force to some unnamed executive than to any of the specific Individual Defendants is the government lawyer's statement that "'there are others higher than Mr. Serra who are certainly of interest to the government.'" (AC ¶ 95)  As the Court noted previously, "caution" should be applied to such statements about others at sentencing hearings in general, *City of Roseville*, 2009 WL 3837659, at *15, but such caution is particularly apt here where the government's lawyer provided no basis for that statement, nor identified any particular person.  *See id.*

---

[8] Plaintiff incorrectly contends (Ans. Br. at 43 n.24) that the Ninth Circuit criticized *In re Apple Computer, Inc. Sec. Litig.*, 243 F. Supp. 2d 1012 (N.D. Cal. 2002) in *Glazer Capital Management, LP v. Magistri*, 549 F.3d 736, 739 (9th Cir. 2008).  In affirming a dismissal for failure to plead scienter, *Glazer* notes that in extreme circumstances "some form of collective scienter pleading might be appropriate."  *Glazer*, 549 F.3d at 744.  The Ninth Circuit suggested that corporate scienter might be established where "a company's public statements were so important and so dramatically false that they would create a strong inference that at least *some* corporate officials knew of the falsity upon publication."  *Id.*  Such extreme allegations have not been made in the Amended Complaint.

II.   **THE AMENDED COMPLAINT DOES NOT ADEQUATELY ALLEGE A VIOLATION OF SECTION 10(B) OR RULE 10(b)-5 IN CONNECTION WITH STATEMENTS ALLEGEDLY MADE BY SERRA, GILL OR GLOVA.**

A.   **The Statements Attributed To Serra, Gill And Glova Are Not Materially Misleading.**

As explained in the Opening Brief, Plaintiff, in its zeal to find any statement anywhere that could be attributed to Serra, Gill or Glova to put in the Amended Complaint, found a few scattered quotes in trade magazines and customer oriented advertisements.  But, *in stark contrast to the statements in the original complaint* that this Court found to be misleading, none of these statements attributed to Serra, Gill or Glova during the alleged class period reported Horizon Lines' *financial results or financial performance*.  (Op. Br. at 34-41)  In its Answering Brief, Plaintiff ignores this critical distinction between the statements in the original complaint that describe Horizon Lines' financial performance (*i.e.*, its revenues, rates and price competition) and the new statements in the Amended Complaint that do not describe Horizon Lines' financial performance.  Instead of recognizing the dispositive difference between the original statements and the new statements attributed to Serra, Gill and Glova, Plaintiff argues that, under this Court's reasoning in the Dismissal Opinion, *any* positive statement about Horizon Lines' "success" in *any context* is false and misleading without disclosure of the alleged price fixing.  (*See* Ans. Br. at 23)  That argument cannot be reconciled with the reasoning of the Dismissal Opinion and the cases upon which it relies.

In the Dismissal Opinion, the Court noted that "[t]he Complaint identifies numerous instances in which defendants continually repeated statements regarding Horizon's ability to increase revenue in the Puerto Rico market despite volume decreases."  *City of Roseville*, 2009 WL 3837659, at *9.  The Court found that the proffered explanations for revenue increases were misleading absent disclosure of all material facts that led to the revenue increases.

*Id*. at \*10.  The Court reasoned: "[a]ccurately depicting successful financial performance, but

attributing the performance to the wrong source, is misleading under the securities laws."  *Id*.

(quoting *In re ATI Techs., Inc., Sec. Litig.*, 216 F. Supp. 2d 418 (E.D. Pa. 2002)).[9]

      To expand the holding of the Dismissal Opinion beyond incomplete statements

regarding the sources of Horizon Lines' financial performance so that it applies to any statement

regarding Horizon Lines' "success" would not only take that holding well outside the reasoning

of the Court and the cases upon which it relied, but would directly conflict with controlling Third

Circuit case law.  *See In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 539 (3d Cir. 1999)

(defendants' "positive portrayals" that "report previous success[]" were not statements that give

rise to a disclosure violation when not accompanied by statements about defendants' allegedly

wrongful conduct); *Galati v. Commerce Bankcorp, Inc.*, No. Civ. 04-3252 (RBK), 2005 WL

3797764, at \*5 (D.N.J. Nov. 7, 2005), *aff'd*, 220 F. App'x (3d Cir. 2007) (positive remarks about

bank's "unique business model" and "convenience" and marketing slogan "America's Most

Convenient Bank" were not material false statements despite non-disclosure of bank's alleged

bid-rigging activities).

      Instead of providing statements made by Serra, Gill or Glova regarding Horizon

Lines' sources of revenues, the Answering Brief seizes upon a superficial similarity between the

---

[9]    The cases cited by the Court all concern misleading statements about sources of revenues and
financial results, not general "success."  *See In re ATI Techs., Inc. Sec. Litig.*, 216 F. Supp. 2d
418, 436 (E.D. Pa. 2002) ("The statements in question were also misleading in that they
falsely ascribed ATI's financial successes to the Rage line of chips."); *In re Providian Fin.
Corp. Sec. Litig.*, 152 F. Supp. 2d 814 (E.D. Pa. 2001) ("The press releases and 1998 Form
10-K attribute Providian's income and revenue successes to Providian's 'customer-focused
approach' . . . . [T]he [complaint] alleges misstatement of the cause of Providian's success.");
*In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574 (D.N.J. 2001) ("In Defendants'
quarter-end press releases [of reported earnings], Defendant Morrison consistently referred to
Campbell's 'volume-driven growth.'").

alleged statements the Court found to be false in the Dismissal Opinion and statements

attributable to Serra in a "Special Advertising Section" that Horizon Lines placed in a trade

journal in September 2006.  (Ans. Br. at 8, 19-20)[10]  The statements in the Special Advertising

Section discuss Horizon Lines' customer service and satisfaction, but unlike those found to be

actionable in the Dismissal Opinion, do not point to these attributes as explanations for

"Horizon's ability to increase revenue in the Puerto Rico market despite volume decreases."  *City

of Roseville*, 2009 WL 3837659, at *9.  Indeed, the subject of the Special Advertising Section is

not Horizon Lines' financial performance, but the Company's optimism about the Puerto Rican

economy and the Company's excellent customer service:

- "The Puerto Rico economy is riding out a difficult period, as witnessed in the two-week government shutdown this past May.  Since then, steps have been accomplished to help sustain and strengthen the financial environment."[11]

- "We are confident of the long-term stability in the main drivers of the Puerto Rican economy."

- "The government's commitment to the land reallocation of the port facilities has allowed us to start a multiyear project to reinvest in the terminal in Puerto Nuevo.  This will ultimately increase our efficiency and improve the service we provide to our customers."

- "Despite Puerto Rico's relatively flat growth this year, Horizon Lines intends to continue its commitment and investments toward the Puerto Rico market."

---

[10]  Plaintiff attached only one page of the thirty-two page Special Advertising Section as an exhibit to its Answering Brief.  (Ans. Br. Ex. 1)  A review of the entire document puts it in the proper context.  (*See* "Special Advertising Section to the *Journal of Commerce*:  Shaping A New Era in U.S. Shipping," *Journal of Commerce*, Sept. 25, 2006 (attached hereto as "Ex. 1"))  The advertising insert congratulates Horizon Lines on its fiftieth anniversary and intersperses marketing commentary between pages of congratulatory advertising purchased by the Company's partners and customers.  (*See generally id.*)

[11]  These statements regarding the general state of the Puerto Rican economy were not misleading absent disclosure of the alleged price fixing.  *See Menkes v. Stolt-Nielsen S.A.*, No. 3:03CV409(DJS), 2005 WL 3050970, at *8 (D. Conn. Nov. 10, 2005).

- "Horizon's Jacksonville Express service provides the fastest north-bound transit from San Juan with cargo available Monday mornings for intermodal connections to U.S. Southeast and Midwest destinations."

- "Our technology continues to be the best in the market, and our customers consistently confirm that's an important differentiator[.]"

- "Not only do we provide transactional capabilities to book cargo, submit shipping instructions and documentation and trace individual shipments, but our customers also use our NetCaptain® Web tools to generate comprehensive reports that allow them to better-manage their supply chain."

- "The renewal of almost half of our 40-foot refrigerated fleet has allowed us to reduce maintenance and claims incidents, and therefore improved the utilization of our fleet. Having equipped the units with the latest technology is also important to better-serve the strict standards required for the exports by the pharmaceutical and biotech industries[.]"

(Ex. 1, 23A)  These statements, and the entirety of the Special Advertising Section, do not purport to explain "Horizon's ability to increase revenue in the Puerto Rico market despite volume decreases" and, therefore, are not materially misleading absent disclosure of the alleged price-fixing conspiracy.[12]

### B. The Statements In The Special Advertising Section Were Not Made "In Connection With" The Purchase Or Sale Of A Security.

For essentially the same reasons that the statements made by Serra, Gill and Glova in the Special Advertising Section are not materially false and misleading, they also do not satisfy the "in connection with the purchase or sale" of a security requirement of Section 10(b). Statements made to customers in consumer advertising placed in the *Journal of Commerce* describing Horizon Lines' customer service, shipping capacity and similar customer issues fall

---

[12]  Defendants also renew their argument that April 25, 2008 announcement of new earnings guidance was not misleading.  Plaintiff contends it was misleading because it did not disclose the alleged purported price-fixing activities, but the DOJ Investigation had already been disclosed on April 17, 2008 and was therefore absorbed into the "total mix" of available information.  (*See* Op. Br. at 45-46)  Plaintiff responds that full disclosure did not occur until after April 17, 2008, but points to no further disclosures in which additional information was revealed.  (Ans. Br. at 31-32)

outside the scope of the securities laws.  (*See* Op. Br. at 35-36)  Plaintiff responds that: (i) the

Amended Complaint adequately alleges that the *Journal of Commerce* is a "'leading trade

magazine for the ocean shipping industry and is closely followed by . . . *investors, analysts and*

*other market professionals*;'" and (ii) in some circumstances, magazine advertisements have been

found to be materially misleading to investors.  (Ans. Br. at 18-19) (emphasis is original) [13]

These arguments ignore the actual context and content of the statements attributed to Serra, Gill

and Glova in the Amended Complaint – the statements are sales-oriented, not investor-oriented,

and describe benefits to customers, not information material to investors.

   *Hemming v. Alfin Fragrances, Inc.*, 690 F. Supp. 239, 244-45 (S.D.N.Y. 1988), is

directly on point.  There, the court declined to apply the securities laws to a *New York Times*

*Magazine* advertisement extolling the benefits of a skin-care product sold by the defendant

corporation on the grounds that any false statements about the product's qualities did not go to

the company's viability as an investment option.  In *Hemming*, the court reasoned: "[a]lthough an

investor might read these promotional materials, [the advertisements] *are geared to consumers of*

*a product, not investors in a corporation*."  *Id*. at 244 (emphasis added).  The court explained

that "[t]he context of these statements places them in a different light."  *Id*. at 245.  *Hemming*

---

[13]   To support its claims that the *Journal of Commerce* is used by stock analysts, Plaintiff
inappropriately submits an exhibit that was not referenced in the Amended Complaint.  (Ans.
Br. Ex. 2)  *See Fosburg v. Lehigh Univ.*, No. Civ. A. 98-CV-864, 1999 WL 124458, at *2
(E.D. Pa. Mar. 4, 1999) (refusing to consider exhibits attached to motion to dismiss that were
neither undisputedly authentic nor referenced in complaint).  In any event, this argument
misses the point.  Stock analysts may read the *Journal of Commerce*, just as they may read
the *New York Times*, but they would not be expected to rely on a Special Advertising Section
that is facially directed to customers.

recognized that investors do not look to a "pure product pitch to consumers" for information about the company's value as an investment.  *Id.*[14]

Plaintiff argues (Ans. Br. at 22) that *Hemming* is inconsistent with *Semerenko v. Cendant Corp.*, 223 F.3d 165, 176 (3d Cir. 2000), but the reasoning of *Semerenko* is entirely consistent with *Hemming*.  In *Semerenko*, the Third Circuit noted that a plaintiff must show "that the misrepresentations in question were disseminated to the public *in a medium upon which a reasonable investor would rely*, and that they were material when disseminated."  223 F.3d at 176 (emphasis added).  The *Semerenko* plaintiff easily cleared this hurdle because he allegedly relied on false information in the financial statements of a party making a tender offer.  *Id.* at 177.  Nothing in *Semerenko* conflicts with *Hemming*.[15]

Plaintiff also contends (Ans. Br. at 22) that the Second Circuit overruled *Hemming* in *In re Carter-Wallace, Inc. Sec. Litig.*, 150 F.3d 153, 156 (2d Cir. 1998), but the *Carter-Wallace* opinion does not even mention *Hemming*.  In *Carter-Wallace,* the court held that the "in connection with [a] purchase or sale of security" requirement was met where there were allegedly false statements in "[t]echnical advertisements in sophisticated medical journals" regarding "highly sophisticated products" that were "of enormous importance to financial analysts."  *Id.* at 156.  The court noted that highly technical and specialized product information

---

[14]   In addition to the Special Advertising Section, Plaintiff alleges that Serra made misstatements in a January 22, 2007 *Journal of Commerce* article and a January 25, 2007 *Caribbean Business Journal* article.  (Ans. Br. at 9)  These statements are also not actionable because they do not discuss rates, revenue or price competition.  Rather, they describe customer service benefits or the economy generally.  (*See* Op. Br. at 36-41)

[15]   Plaintiff also contends that *In re Craftmatic Securities Litigation v. Kraftsow*, 890 F.2d 628, 646 (3d Cir. 1989), is somehow inconsistent with *Hemming*.  (Ans. Br. at 22)  However, the statements at issue in *Craftmatic* were not found in consumer advertisements but in a prospectus delivered to investors.

included in consumer advertising, such as technical information distributed by drug companies or nuclear power plants, can be of sufficient importance to investors to place those advertisements within the ambit of the securities laws. *Id.* The statements attributed to Serra, Gill and Glova in the Amended Complaint, however, do not concern such highly technical product information; they are mere generalized consumer pitches akin to the *Hemming* advertisements about skin-care products.

Plaintiff next tries to portray the advertisement as of "minimal interest to customers," (Ans. Br. at 19-21) but a review of the document itself belies this contention. For example, Plaintiff contends that Serra's statement about Horizon's "fleet enhancement program" was not aimed at customers. That program, however, provided customers with increased capacity and service improvements:

> Serra expects further service improvement because of Horizon's fleet enhancement program starting next year; the company plans to add five new vessels to the overall fleet. He predicts that with the resulting cascade effect of reallocated vessels moving into the Puerto Rico service strings, the result will be an approximate 24 percent increase in deployed capacity offered by Horizon Lines in the Puerto Rico market.

(Ex. 1, 23A) Another statement from the advertisement that Plaintiff highlights in the Answering Brief is: "'Projects under way since last October total $4.8 million invested by the end of this year. Subsequent phases will result in an additional $8 million to $10 million investments for 2007 and 2008.'" (Ans. Br. at 20) Again, the statement emphasizes improved facilities for customers, not financial returns for investors. (Ex. 1, 23A)

In sum, the Special Advertising Section's discussion of customer service, product capacity and the like are not actionable under the securities laws because the statements were not made in connection with a purchase or sale of a security. *See Hemming*, 690 F. Supp. at 245.

22

### C.      Serra's January 31, 2005 Statement Is Not Actionable.

In the Opening Brief, Defendants pointed out that the only statement in the Amended Complaint attributed to any of the Puerto Rican Division Employees that discusses rates, revenues or price competition is a January 31, 2005 *Journal of Commerce* article where Serra is reported to be discussing Horizon Lines' rates in 2003-2004 and the Company's efforts to recover rising costs by increasing rates.  (Op. Br. at 41)  This statement occurred *eight months* before Horizon Lines' initial public offering and *two years* before Plaintiff first purchased the Company's stock.  Defendants explained why the long delay between this alleged statement and Plaintiff's share purchase requires dismissal:  (i) the January 31, 2005 statement was stale and immaterial by the IPO date, and even more so by the March 2007 purchase date; (ii) Plaintiff cannot adequately allege reliance on the statement based on a fraud-on-the-market theory; and (iii) Plaintiff has not adequately alleged that Serra intended to deceive *investors* when making the statement at a time when *there were no such investors*.  (Op. Br. at 42-45)  The Answering Brief has no adequate response to these arguments.

Plaintiff fails to explain how it could have plausibly relied on Serra's January 2005 statement when it purchased its stock *two-plus years later* in March 2007.  Not only was the statement made over two years before the stock purchase, but it concerned rates from 2003 to 2004.  (AC ¶ 157)  Such dated and stale rate information, which would have been long superseded by more current rate information, could not have affected Plaintiff's decision to invest.  *See Rand v. Cullinet Software, Inc.*, 847 F. Supp. 200, 210 (D. Mass. 1994) (holding outdated statement regarding product pipeline "lost any possible materiality by the time of [plaintiff's] purchase" because such information is "material for only a limited period of time"); *See In re Kidder Peabody Sec. Litig.*, Civ. No. 94-3954 (JFK), 1995 WL 590624, at *5

(S.D.N.Y. Oct. 4, 1995) (statements made three months before class period began were immaterial as a matter of law).

Nor can Plaintiff use the fraud-on-the-market theory to show reliance.  This theory rests on the premise that there is an open and developed market for the security at issue – *i.e.*, an efficient market.  *Stinson v. Van Valley Dev. Corp.*, 714 F. Supp. 132, 134-35 (E.D. Pa. 1989), *aff'd mem.*, 897 F.2d 524 (3d Cir. 1990) (no reliance alleged where no factual allegations that efficient market existed to absorb alleged materially misleading statements).  Plaintiff has not alleged – and cannot allege – that an efficient market existed at the time of the January 31, 2005 statement.  Serra's statement could not have "artificially inflated" the trading value of Horizon's securities when there were no public securities at the time of the statement – and not until *eight months later*.[16]  None of the cases cited by Plaintiff involved pre-IPO statements.[17] Further, Plaintiff does not allege that Serra's statement was incorporated into Horizon Lines' IPO prospectus; rather, other, more current financial information was provided to investors.

---

[16]  Plaintiff tries to distinguish *In re Ethylene Propylene Diene Monomer(EPDM) Antitrust Litigation*, 256 F.R.D. 82, 101 (D. Conn. 2009), and *In re MetLife Demutualization Litigation*, 229 F.R.D. 369 (E.D.N.Y. 2005) as mere class certification cases, but each case squarely holds that the fraud-on-the-market theory does not apply when an efficient market does not exist.  *See EPDM*, 256 F.R.D. at 101; *MetLife*, 229 F.R.D. at 379 n.5.

[17]  *See Zelman v. JDS Uniphase Corp.*, 376 F. Supp. 2d 956, 965-66 (N.D. Cal. 2005); *Urbach v. Sayles*, Civ. No. 91-1291, 1991 WL 236183, at *9 (D.N.J. Sept. 4, 1991); *In re MTC Elec. Techs. S'holders Litig.*, 898 F. Supp. 974, 987 (E.D.N.Y. 1995); *In re U.S. Aggregates, Inc. Sec. Litig.*, 235 F. Supp. 2d 1063, 1065 n.1 (N.D. Cal. 2002); *In re Reliance Sec. Litig.*, 135 F. Supp. 2d 480, 510 (D. Del. 2001); *In re Quintel Entm't Inc. Sec. Litig.*, 72 F. Supp. 2d 283, 290-91 (S.D.N.Y. 1999).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be granted in its entirety and the Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

  /s/ Paul J. Lockwood
Anthony W. Clark (ID No. 2051)
Paul J. Lockwood (ID No. 3369)
Nicole A. DiSalvo (ID No. 4662)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899
Telephone:  (302) 651-3000
paul.lockwood@skadden.com

*Attorneys for Defendants Horizon Lines, Inc. and Horizon Lines, LLC*

  /s/ Steven L. Caponi
Steven L. Caponi (ID No. 3484)
BLANK ROME LLP
1201 Market Street
Wilmington, Delaware  19801
Telephone:  (302) 425-6400
caponi@blankrome.com

Joseph O. Click
BLANK ROME LLP
Watergate, 600 New Hampshire Ave., NW
Washington, DC  20037
Telephone:  (202) 772-5966

*Attorneys for Defendant Charles G. Raymond*

  /s/ Kevin F. Brady
Kevin F. Brady (ID No. 2248)
Jeremy D. Anderson (ID No. 4515)
CONNOLLY BOVE LODGE
  & HUTZ LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware  19899
Telephone:  (302) 658-9141
kbrady@cblh.com

*Attorneys for Defendants M. Mark Urbania, John W. Handy and Brian W. Taylor*

  /s/ William M. Lafferty
William M. Lafferty (ID No. 2755)
MORRIS NICHOLS ARSHT &
  TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19899
Telephone:  (302) 658-9200
wlafferty@mnat.com

OF COUNSEL:
Christopher M. Curran
Matthew S. Leddicotte
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC  20005
Telephone: (202) 626-3600

*Attorneys for Defendant John V. Keenan*

DATED:  March 26, 2010

25