**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 10-2788 and 10-3815
_____

CITY OF ROSEVILLE EMPLOYEES' RETIREMENT SYSTEM,
Individually and on Behalf of All Others Similarly Situated

v.

HORIZON LINES, INC.; CHARLES G. RAYMOND; MARK URBANIA;
GABRIEL SERRA;  R. KEVIN GILL; GREGORY GLOVA; HORIZON LINES, LLC;
JOHN V. KEENAN; JOHN W. HANDY; BRIAN TAYLOR

THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT,
LEAD PLANTIFF,
Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
(D.C. Civil No. 08-cv-00969)
District Judge:  Honorable Harvey Bartle, III
_____

Argued June 23, 2011
_____

Before: BARRY, AMBRO and VAN ANTWERPEN, *Circuit Judges*

(Opinion Filed: August 24, 2011)
_____

John C. Browne, Esq. (Argued)
Bernstein, Litowitz, Berger & Grossmann
1285 Avenue of the Americas
38th Floor
New York, NY 10019

*Counsel for Appellant*

Paul J. Lockwood, Esq. (Argued)
Skadden, Arps, Slate, Meagher & Flom
One Rodney Square
P.O. Box 636
Wilmington, DE 19801

*Counsel for Appellees*

_____

OPINION
_____

BARRY, *Circuit Judge*

In this securities fraud class action, the District Court dismissed all claims against

the corporate defendants and five of the individual defendants. The lead plaintiff appeals.

We will affirm.

## I.    BACKGROUND

Because we write only for the parties, we set forth only the facts and procedural

history necessary for our analysis. Horizon Lines, Inc., and its wholly owned subsidiary,

Horizon Lines, LLC (collectively "Horizon"), are shipping companies. This case is

bottomed on securities fraud claims that arise out of price fixing in Horizon's shipping

business from the United States to Puerto Rico, which is a limited, oligopolistic market

that comprised about a third of Horizon's business during the time period at issue.

Horizon held its initial public offering ("IPO") on September 26, 2005. The price fixing

conspiracy became public on April 17, 2008, when the Department of Justice and the FBI executed search warrants on Horizon and Horizon issued a statement acknowledging the investigation. On April 25, 2008, Horizon announced that "its revenue and earnings were not sustainable." (R. at A-448.) Its stock price plummeted after both announcements.

There are eight individual defendants in this matter, all of whom hold or held management or executive positions at Horizon. Three of them – Gabriel Serra, R. Kevin Gill, and Gregory Glova (collectively "Puerto Rico managers") – pled guilty to price fixing in the Puerto Rico market from May of 2002 to April of 2008. No criminal charges have been filed against the other five individual defendants: Charles Raymond, Mark Urbania, John Keenan, John Handy, and Brian Taylor (collectively "senior executives"). After the parties filed their briefs on appeal, Horizon Lines, LLC, itself pled guilty to price fixing charges, for which it had *respondeat superior* liability.

The Police and Fire Retirement System of the City of Detroit is the lead plaintiff in this putative securities class action case. In brief, it alleges that defendants made statements about Horizon's financial health, in particular explaining why Horizon was increasing shipping rates and otherwise doing well in a tight Puerto Rico market, and that those statements were false because the company's apparent well-being in Puerto Rico was due to price fixing, not the reasons Horizon and its executives identified.

The District Court granted the motion of Horizon and the senior executives to dismiss all claims in the Amended Consolidated Securities Class Action Complaint

3

("Amended Complaint").[1] It held that the senior executives made materially false statements, but nonetheless dismissed the claims against them because there were insufficient allegations to raise a strong inference that they made those false statements with scienter. The Court conversely held that the Puerto Rico managers acted with scienter, but that they did *not* make material false statements on which plaintiff relied. As to Horizon, the Court concluded that it could not be liable because there were not sufficient allegations that an individual defendant *both* made material false statements, on which the plaintiff relied, *and* acted with scienter.

## II.   ANALYSIS[2]

Plaintiff brings its claims pursuant to Section 10(b) of the Securities Exchange Act of 1934 and the Securities and Exchange Commission's Rule 10b-5.[3]

---

[1] The District Court previously granted a motion to dismiss the original Consolidated Securities Class Action Complaint. The Puerto Rico managers did not file a motion to dismiss either complaint, but after the Court granted the motion of Horizon and the senior executives to dismiss the Amended Complaint, the Court issued a final judgment under Fed. R. Civ. P. 54(b) in favor of all defendants except the Puerto Rico managers. The claims against the Puerto Rico managers remain pending in the District Court, where this case is stayed until the resolution of this appeal.

[2] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

[3] In addition to dismissing the claims under § 10(b) and Rule 10b-5, the District Court dismissed plaintiff's claims under § 20(a), which "creates a cause of action against individuals who exercise control over a 'controlled person,' including a corporation, that has committed a violation of Section 10(b). Accordingly, liability under Section 20(a) is derivative of an underlying violation of Section 10(b) by the controlled person." *Inst. Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009) (citation omitted). Because the Court correctly dismissed the § 10(b) claims, we will not further address § 20(a).

> To state a claim for securities fraud under Rule 10b-5, plaintiffs must
> "allege defendants made a misstatement or an omission of material fact
> ["material false statement"] with scienter in connection with the purchase or
> the sale of a security upon which plaintiffs reasonably relied and plaintiff's
> [sic] reliance was the proximate cause of their injury."

*Inst. Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 251 (3d Cir. 2009) (quoting *Winer*

*Family Trust v. Queen*, 503 F.3d 319, 326 (3d Cir. 2007)).

We are reviewing the grant of motions to dismiss the Amended Complaint. As

with any motion to dismiss, we assume that the facts pled in the Amended Complaint are

true, and we "consider the complaint in its entirety, as well as other sources courts

ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss." *Tellabs, Inc. v.*

*Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A plaintiff alleging securities

fraud violations, however, "must satisfy the heightened pleading rules codified in the

PSLRA [Private Securities Litigation Reform Act]." *Avaya*, 564 F.3d at 252; *see also*

*Merck & Co. v. Reynolds*, 130 S. Ct. 1784, 1796 (2010) ("Indeed, Congress has enacted

special heightened pleading requirements for the scienter element of § 10(b) fraud

cases."). Those heightened pleading rules require that

> the complaint must specify each allegedly misleading statement, why the
> statement was misleading, and, if an allegation is made on information and
> belief, all facts supporting that belief with particularity. Second, the
> complaint must, with respect to each act or omission alleged . . . state with
> particularity facts giving rise to a strong inference that the defendant acted
> with the required state of mind.

*Avaya*, 564 F.3d at 252-53 (internal quotation marks, citations, and footnote omitted).

"Scienter is a mental state embracing intent to deceive, manipulate, or defraud, and

5

requires a knowing or reckless state of mind." *Id.* at 252 (internal quotation marks and citations omitted). In this context, the standard for recklessness is high:

> [a] reckless statement is one involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.

*Id.* at 267 n.42 (internal quotation marks omitted). Allegations akin to corporate mismanagement are not sufficient. *Id.* In analyzing whether there is a *strong inference* of scienter, we

> weigh the plausible nonculpable explanations for the defendant's conduct against the inferences favoring the plaintiff. A strong inference of scienter is one that is cogent and at least as compelling as any opposing inference of nonfraudulent intent. The pertinent question is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.

*Id.* at 267-68 (internal quotation marks and citations omitted). "[T]he inference of scienter must be more than merely 'reasonable' or 'permissible'" but "need not be irrefutable." *Tellabs*, 551 U.S. at 324. This is judged from the perspective of a "reasonable person." *Id.* at 326. "[O]missions and ambiguities count against inferring scienter." *Id.*

We substantively agree with the District Court's resolution of the defendants' motions to dismiss. There is no need to retrace all of the ground that the Court so ably covered in its lengthy and extraordinarily thorough opinions, and we address below only the few issues that merit some further discussion.

Our dissenting colleague concludes that the Amended Complaint pled sufficient facts to raise a strong inference that the senior executives acted with scienter when they made material false statements, and thus that there were sufficient allegations of Horizon's scienter, as well.[4] The dissent notes, for example, that the Puerto Rico market was a significant portion of Horizon's business, that the conspiracy went on for six years, that Urbania left Horizon under unusual circumstances, and that Horizon had an IPO during this period, which would have required senior management to take a close look at the company's finances.

The dissent focuses not on the District Court's analysis of each of these allegations but rather on the brevity of the Court's explicit discussion of the *totality* of the facts related to scienter. That specific section of the Court's opinion was brief, but it followed a lengthy discussion as to why *each* scienter-related allegation added little, if anything, to plaintiff's side of the scienter scale. The Court did not need to explain at length that the *total* weight of these allegations was also scant. To put it succinctly, it does not take much to explain that zero plus zero equals zero.[5]

---

[4] The dissent appears to agree, as we do, with the District Court's conclusion that the Puerto Rico managers did not make statements that would be actionable under the securities laws.

[5] Plaintiff and the dissent also highlight two facts from related criminal proceedings. In the case against Gill, the government stated that Gill had provided evidence against "'his superiors'" at Horizon, "'including presently uncharged co-conspirators.'" (R. at A-446-47.) The government neither named any of these "superiors" nor, so far as we know, charged any of them with any crimes. This vague statement is insufficient to strengthen the scienter allegations for any individual senior executive.

After the parties filed their briefs in this appeal, Horizon Lines, LLC, pled guilty to

7

The PSLRA places a weighty burden on plaintiffs, and in accord with the District Court, we conclude that plaintiff did not plead sufficient facts, when viewed in their totality, to raise a strong inference of scienter as to the senior executives. Horizon's scienter, thus, cannot be based on the scienter of any individual.

The question remains whether plaintiff may otherwise plead scienter as to Horizon, and if so, whether it has done so. The District Court applied the Fifth Circuit's approach in *Southland Securities Corp. v. INSpire Insurance Solutions, Inc.*, in which the court recognized that *statements* of executive officers may be attributed to a corporation when they are "made pursuant to their positions of authority within the company." 365 F.3d 353, 366 (5th Cir. 2004). But with respect to whether a corporation had the *scienter* to make the statements, the Fifth Circuit held that

> it [is] appropriate to look to the state of mind of the individual corporate official or officials who make or issue the statement . . . rather than generally to the collective knowledge of all the corporation's officers and employees acquired in the course of their employment.

*Id.* Because there was no individual at Horizon who made actionable statements with scienter, the Court concluded that plaintiff had not pled scienter against Horizon.

Plaintiff contends, however, that it may plead scienter against the corporation without successfully pleading a claim against any individual. It primarily relies on two

---

antitrust violations. Given Horizon's *respondeat superior* liability, this is an unremarkable event, and we will not speculate about the government's motivation in bringing the charges against Horizon. We have no way of knowing whether the government "had information indicating that [Horizon's] senior management was involved in the conspiracy." (Dissent, Draft Slip. Op. at 11.)

cases, but the facts in both cases are distinguishable from those alleged here, and so we will discuss them only briefly. In *City of Monroe Employees Retirement System v. Bridgestone Corp.*, Bridgestone and its subsidiary Firestone had information that their tires were rupturing and causing, among other things, a significant number of rollover accidents. 399 F.3d 651, 656-59 (6th Cir. 2005). Bridgestone and Firestone engaged in a variety of tactics, such as a large-scale secret settlement with State Farm Insurance Co., to keep the scope of the problem from safety regulators in the United States and several other countries, as well as from investors. *Id.* at 658-59. When the truth came out and the stock declined, plaintiffs filed a suit under the PSLRA. The Sixth Circuit affirmed the dismissal of the claims against the individual defendants but nonetheless held that the facts supported scienter for corporate defendants. *Id.* at 690-91.

The alleged wrongdoing in *Bridgestone* was, however, extraordinary, akin to the facts imagined by the Seventh Circuit in this hypothetical:

> Suppose General Motors announced that it had sold one million SUVs in 2006, and the actual number was zero. There would be a strong inference of corporate scienter, since so dramatic an announcement would have been approved by corporate officials sufficiently knowledgeable about the company to know that the announcement was false.

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 710 (7th Cir. 2008).

Although the price fixing conspiracy at Horizon was long-lasting and affected a substantial portion of Horizon's business, the facts pled here are a far cry from those in

*Bridgestone* or in the Seventh Circuit's hypothetical,[6] and we need not decide whether we agree with either approach. Even if, however, it were possible to plead scienter against a corporation without pleading scienter against an individual, the facts alleged here would not survive a motion to dismiss.

### III.  CONCLUSION

We will affirm the judgment of the District Court.

---

[6] For example, it is not as though Horizon did *no* shipping in the Puerto Rico market while claiming that business there was going well.

City of Roseville Employees' Retirement System v. Horizon Lines Inc.
Nos. 10-2788 & 10-3815

AMBRO, <u>Circuit Judge</u>, dissenting

To state a claim under § 10(b) of the Securities Exchange Act, a plaintiff

must "allege defendants made a misstatement or omission of material fact with

scienter in connection with the purchase or the sale of a security upon which

plaintiffs reasonably relied . . . ." *Institutional Investors Group v. Avaya*, 564 F.3d

242, 251 (3d Cir. 2009) (quotations and citations omitted). The District Court,

with which my colleagues have expressed their agreement, held that plaintiffs,

represented by the Police and Fire Retirement System of the City of Detroit

("PFRS"), failed to meet this requirement.

Though it determined that PFRS had alleged sufficient facts to show that

senior officers of Horizon Lines, Inc. ("Horizon")—Charles Raymond, M. Mark

Urbania, John V. Keenan, Brian W. Taylor, and John W. Handy (collectively, the

"senior executives")—made false statements on which shareholders of Horizon

relied, the Court ruled that PFRS failed to show they acted with the requisite

scienter. While acknowledging that Gabriel Serra, R. Kevin Gill, and Gregory

Glova (the "Puerto Rico managers") had scienter,[1] it held that PFRS had not

alleged sufficient facts to show they made false statements. Then, applying the

rule of the Court of Appeals for the Fifth Circuit in *Southland Sec. Corp. v.*

---

[1] It was undisputed before us that the Puerto Rico managers had scienter, as they were convicted of criminal antitrust violations for their role in the conspiracy and sentenced to terms of imprisonment.

*INSpire Ins. Solutions, Inc.*, 365 F.3d 353 (5th Cir. 2004) , the District Court

concluded that, because no strong inference existed that a single Horizon

employee made a false statement with scienter, PFRS could not survive a motion

to dismiss as to Horizon itself.  Because I believe that PFRS has alleged facts

sufficient to support a strong inference that the senior executives made false

statements with scienter, I think the District Court erred in dismissing PFRS's

amended complaint as to the senior executives and to Horizon.[2]  Thus, I

respectfully dissent.

Section 10(b) of the Securities and Exchange Act is given content by Rule

10b-5 of the Securities and Exchange Commission.  The Rule makes it "unlawful

for any person . . . [t]o make any untrue statement of a material fact or to omit to

state a material fact necessary in order to make the statements made, in the light of

the circumstances under which they were made, not misleading . . . in connection

with the purchase or sale of any security."  17 C.F.R. § 240.10b-5(b).  To state a

claim for relief under this section, plaintiffs must plead facts showing that "(1) the

defendant[s] made a materially false or misleading statement or omitted to state a

material fact necessary to make a statement not misleading; (2) the defendant[s]

---

[2] PFRS's allegations that the senior executives made false statements were
essentially undisputed before us.  The best Horizon can do is claim that although it
did not address whether the senior executives made false statements, it "d[id] not
concede" the point.  Horizon Br. 17.  As I agree with my colleagues and the
District Court that PFRS has more than adequately satisfied this requirement, and
Horizon presents no arguments to the contrary, I do not address this further.

acted with scienter; and (3) the plaintiff[s]' reliance on the defendant[s]' misstatement caused [their] injury." *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004); *see also Avaya, Inc.*, 564 F.3d at 251.

The Private Securities Litigation Reform Act (the "PSLRA") imposes heightened pleading requirements on plaintiffs bringing suit under the Securities and Exchange Act. *See* 15 U.S.C. § 78u-4(b). Specifically, with respect to the scienter requirement, a plaintiff must allege facts giving rise to a "strong inference" of "either reckless or conscious behavior." *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534-35 (3d Cir. 1999). We have held that the PSLRA "obliges courts to weigh the 'plausible nonculpable explanations for the defendant's conduct' against the 'inferences favoring the plaintiff.' . . . A 'strong inference' of scienter is one that is 'cogent and at least as compelling as any opposing inference of nonfraudulent intent.'" *Avaya,* 564 F.3d at 267 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314, 323 (2007) ("*Tellabs*")). However, as the Supreme Court has admonished, "[t]he inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the most plausible of competing inferences.' . . . The inquiry . . . is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 322-24.

This is where I believe the District Court erred. In its 50-page opinion, the

Court dedicated a scant one page to its collective analysis of scienter.  As the

Supreme Court has made clear, we must consider all allegations of scienter

together.  I agree with the Court of Appeals for the Sixth Circuit that "reviewing

each allegation individually before reviewing them holistically risks losing the

forest for the trees."  *Frank v. Dana Corp.*, 2011 WL 2020717, at *5 (6th Cir. May

25, 2011).

Moreover, I believe that PFRS has alleged sufficient facts to raise a strong

inference that the senior executives acted with scienter.  First, this was not a subtle

conspiracy.  It persisted for more than six years and involved a shipping market

that accounted for more than a third of Horizon's total revenue.  Although

shipping volumes in the Puerto Rico market had been declining steadily for more

than a decade, and Horizon had three competitors for an ever-shrinking customer

base, it managed to increase its shipping rates, and thus its revenues, every year

during the class period.  Moreover, the conspiracy spanned Horizon's initial public

offering of its stock, in preparation for which the senior executives assessed the

company's business and financial position.  Against this "array of circumstantial

evidence" it is hard to believe that five of Horizon's most senior officers,

including the Chief Executive Officer and the Chief Financial Officer, were not at

least reckless in failing to discover the antitrust conspiracy.  *Avaya*, 564 F.3d at

269.

Second, while we may not infer scienter solely from management's

4

position or "general awareness of the day-to-day workings of the company's business," we have held that a corporate officer had scienter as to risky behavior by other employees when he was asked about the behavior and denied its existence.  *Id.* at 269-70; *see also Makor v. Tellabs*, 513 F.3d 702, 704 (7th Cir. 2008) ("When the facts known to a person place him on notice of a risk, he cannot ignore the facts and plead ignorance of the risk.").  Similarly, in this case, the senior executives were pressed repeatedly by perplexed investors about how Horizon's regular shipping rate increases in Puerto Rico were possible.  In response, they credited a variety of reasons, including a stable competitive environment, responsible competition, market discipline, customer relationships, and good business practices.  PFRS Br. 42-43 (citing A-483-84, 494, 516, 519, 525, 531-33, 535).  Combined with the nature, scope, and timing of the conspiracy, this is, I believe, sufficient to raise a strong inference that the senior executives were aware of the anomaly presented by Horizon's ever-improving financial situation in a declining market, and were, at best, reckless as to the cause.

The evidence does not end there.  Third, Urbania, Horizon's former Chief Financial Officer, announced his resignation, departed, and was replaced just two weeks prior to Horizon's announcement that it was being investigated for antitrust violations.  Putting aside the timing of his sudden leaving, Urbania purportedly forfeited $4,000,000 in stock options and, contrary to standard company practice, did not receive a severance package.  To say that this is not typical politely

understates suspicious circumstances deserving, at least, further inquiry.  Indeed, the Court of Appeals for the Ninth Circuit has held that scienter may be inferred when an executive's resignation "was uncharacteristic when compared to the defendant's typical hiring and termination patterns or was accompanied by suspicious circumstances . . . ." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009).

One is tempted to say that these allegations, if true, compel further investigation if not a finding of scienter.  Yet the District Court concluded that the temporal proximity of Urbania's resignation to Horizon's disclosure was irrelevant because the conspiracy and the investigation were covert prior to that announcement.  The Court determined that, because it did not allege a more direct link, PFRS had "simply . . . not connected Urbania's resignation to the price-fixing conspiracy."  A-90.  But, to repeat, a "strong inference" of scienter need only be "cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs*, 551 U.S at 314.  The District Court did not explore possibly benign explanations for Urbania's sudden resignation at great personal expense (and Horizon doesn't offer any).  Taken together, it appears to me that the nature, scope, and duration of the conspiracy, the questioning by investors, and Urbania's resignation establish that it is more likely than not that one or more of the senior executives acted with the requisite scienter.

And there's more!  Fourth, PFRS notes that the Government represented in

6

a sentencing memorandum that defendant Gill had "provided evidence, in the form of statements and documents, *against his superiors within [Horizon], including presently uncharged co-conspirators*." A-446-47 (emphasis added). PFRS points out that it named as defendants all of Gill's superiors (including Taylor, to whom he reported directly) who were involved with the Puerto Rican market. The District Court dismissed this allegation as "vague" and "speculative at best," stating that PFRS had failed to plead particularized facts regarding scienter and the specific role of each defendant in the conspiracy. A-39.

Standing alone, I agree this would not be enough to raise a strong inference of scienter. But we are not to view PFRS's allegations individually. Instead, we must ask "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter . . . ." *Tellabs*, 551 U.S. at 323 (emphasis in original). With all else alleged, the Government's statement that Gill provided evidence of the involvement of his superiors in the antitrust conspiracy crosses the divide from suspicious to my belief that it is more likely than not Horizon's senior executives acted with scienter.[3]

---

[3] PFRS also notes that motive, particularly financial gain, and opportunity "may weigh heavily in favor of a scienter inference." *Id*. at 325. PFRS alleges that the senior executives acquired substantial stock and stock options in Horizon, some of which they sold for millions of dollars in proceeds during the class period, and thus had the motive to engage in the conspiracy to inflate the price of Horizon's stock. Stock transactions may create an inference of scienter when they are "'unusual in scope or timing.'" *Avaya*, 564 F.3d at 279 (quoting *Advanta*, 180 F.3d at 540). The stock sales at issue at first blush do not appear to meet that test,

In sum, because PFRS's allegations are sufficient to raise a strong inference of scienter as to the senior executives, I believe the District Court erred in dismissing PFRS's amended complaint as to them.

Our sister Courts of Appeals have required different things of plaintiffs to survive a motion to dismiss on a § 10(b) claim against a corporation.   In *Southland*, the Court of Appeals for the Fifth Circuit held that a plaintiff must plead that at least one individual acting on behalf of the corporation made a false statement with the requisite state of mind.  365 F.3d at 367.  This was the approach adopted, without discussion, by the District Court.  In contrast, the Court of Appeals for the Sixth Circuit adopted a collective scienter rule, holding that "knowledge of a corporate officer or agent acting within the scope of his authority is attributable to the corporation."  *City of Monroe Employees Retirement Sys. v. Bridgestone Corp.*, 399 F.3d 651, 688 (6th Cir. 2005) (internal quotations omitted).  The Court of Appeals for the Seventh Circuit has applied the principle of *respondeat superior* in analyzing whether an individual defendant's scienter could be attributed to the corporation, *Pugh v. Tribune Co.*, 521 F.3d 686 (7th Cir. 2008), and has suggested that "it is possible to draw a strong inference of corporate scienter without being able to name the individuals who concocted and

---

as most of them were made pursuant to § 10b5-1 plans, under which corporate executives sell predetermined amounts of stock on predetermined dates to avoid liability for insider trading.  However, the existence of the § 10b5-1 plans is also not exculpatory because the plans were put into place in 2006, *after* the conspiracy began.

8

disseminated the fraud," *Tellabs II*, 513 F.3d at 710.  Finally, the Court of Appeals

for the Second Circuit has offered a helpful reconciliation of the cases:

> When the defendant is a corporate entity, . . . the pleaded facts must
> create a strong inference that someone whose intent could be imputed to the
> corporation acted with the requisite scienter.  In most cases, the most
> straightforward way to raise such an inference for a corporate defendant
> will be to plead it for an individual defendant.  But it is possible to raise the
> required inference with regard to a corporate defendant without doing so
> with regard to a specific individual defendant. . . .  Congress has imposed
> strict requirements on securities fraud pleading, but we do not believe they
> have imposed the rule urged by defendants, that in no case can corporate
> scienter be pleaded in the absence of successfully pleading scienter as to an
> expressly named officer.

*Teamsters Local 445 Freight v. Dynex Capital*, 531 F.3d 190, 195-96 (2d Cir.

2008).

Because I believe that PFRS has alleged sufficient facts to show that the

senior executives made false statements with scienter, and thus satisfied the

strictest of the tests for corporate scienter (set forth in *Southland*), I believe that we

need not reach the question of whether plaintiffs could survive a motion to dismiss

as to Horizon with something less.

If all the above is not convincing enough that Horizon's motion to dismiss

should be denied, we have late-breaking news:  Horizon itself pled guilty to

criminal antitrust violations.  And guess who was excluded from the

accompanying non-prosecution agreement?  You guessed it—the senior

9

executives (save Taylor).[4]

Horizon argues that its guilty plea has "no bearing" on whether PFRS has adequately pleaded corporate scienter because the standards are different—a corporation may be criminally liable under the doctrine of *respondeat superior* if any of its employees engage in antitrust activities, while under the securities laws a corporation may only be held liable if persons responsible for making false statements to the public also had scienter.

But this argument begs the question of what plaintiffs are required to plead to state a claim for corporate scienter. Even if we were to adopt such a rule, Horizon's guilty plea, together with the exclusions in the non-prosecution agreement, weigh in favor of the scienter of the senior executives. As PFRS points out, "corporations are *not* charged criminally on the basis of actions of a 'rogue employee.'" PFRS Supp. Br. 2 (quoting United States Attorney's Manual 9-28.500(A)) (emphasis in original). Rather, "the *most* important consideration in determining whether to charge an entire corporation criminally is the 'role and conduct of management.'" *Id.* (emphasis in original).

---

[4] PFRS does not "advocate[e] a rule that a corporate guilty plea, by itself, automatically leads to a successful securities fraud complaint." PFRS Supp. Br. 4. As PFRS acknowledges, "[e]ven where a corporation pleads guilty to criminal activities, the plaintiff must also establish that the corporation issued false statements inconsistent with the facts admitted in the plea, that the false statements were material, the truth was not known to the public, and that revelation of the truth caused the plaintiffs' losses." *Id.* (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 339 (2005)).

10

I believe it is more likely than not that the Government chose to pursue criminal liability for Horizon, more than two years after the Puerto Rico managers were imprisoned for their involvement, because it had information indicating that its senior management was involved in the conspiracy.  Gilding the lily is not needed here, but there it is.

In conclusion, because I have no doubt that PFRS's allegations are sufficient to raise a strong inference of scienter as to the senior executives, I conclude the District Court erred in dismissing PFRS's amended complaint as to both the senior executives and Horizon.  Indeed, it is hard to imagine a more compelling confluence of circumstantial evidence in support of this conclusion.  In holding that the allegations in this case do not meet the requirements of § 10(b), I believe that the majority is demanding precisely what the Supreme Court told it not to require—a "smoking-gun."  *See Tellabs*, 551 U.S. at 324.  Thus I respectfully dissent.